IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01868-RBJ

TERRENCE M. WYLES,

    Plaintiff,

v.

ALLEN ZACHARY SUSSMAN,
LOEB & LOEB L.L.P.,
ALUMINAID INTERNATIONAL, A.G.,
WEST HILLS RESEARCH & DEVELOPMENT, INC. f/k/a Aluminaid, Inc.,
ALUMINAID PTE LTD a/k/a Advanced First Aid Research PTE LTD,
CARL J. FREER,
JAMES JOHN HUNT,
ADAM FREER aka Adam Agerstam,
JULIA FREER-AGERSTAM aka Julia Freer aka Julia Agerstam,
DAVID ANDREW WARNOCK,
ALEX ARENDT,
JOE MARTEN, and
THOMAS D. BRADY aka Tom Brady,

    Defendants.

## ORDER on MOTIONS TO DISMISS

Defendants Allen Z. Sussman and Loeb & Loeb, LLP (the "Loeb defendants") and Thomas D. Brady move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The Loeb defendants' motion is denied. Mr. Brady's motion is granted.

### BACKGROUND

Terrence M. Wyles is a Colorado attorney. According to his Amended Complaint, in May 2012 he was hired to be the chief in-house counsel for Aluminaid, Inc., a Delaware

1

corporation which at that time had its principal place of business in Snowmass Village, Colorado. *See* ECF No. 27-11 (Aluminaid, Inc. Periodic Report, filed with the Colorado Secretary of State on January 17, 2013). Another Aluminaid company, Aluminaid International, A.G., also had its principal place of business in Colorado at that time. Wyles Aff., ECF No. 27-1, ¶3.[1]

Mr. Wyles alleges that after his engagement as in-house counsel he discovered that defendant Carl Freer, the CEO of the company, and other individuals were misappropriating or embezzling corporate funds. However, his attempts to bring attention to the misconduct were greeted with efforts to intimidate and defame him, including among other things accusations that he had engaged in sexual harassment of a female employee. Ultimately his employment was terminated.

On July 26, 2013 defendant West Hills Research & Development, Inc., formerly known as Aluminaid, Inc., and Aluminaid International, AG sued Mr. Wyles in state court in California, alleging fraud and misappropriation of trade secrets. By then Aluminaid had relocated its headquarters to California.

In turn Mr. Wyles, on March 6, 2014, sued Aluminaid International, A.G.; West Hills Research & Development, Aluminaid PTE Ltd, Mr. Freer and others in the Arapahoe County, Colorado District Court. *See* Complaint, ECF No. 15-1. He asserted claims of (1) breach of contract, (2) violation of the Colorado Wage Act, (3) libel and slander, (4) wrongful termination,

---

[1] Counsel represents that before the present lawsuit was filed the two Colorado-based Aluminaid companies had relocated to California (or otherwise outside of Colorado), which explains plaintiff's allegation of subject matter jurisdiction based upon diversity of citizenship. The pending motion does not concern subject matter jurisdiction.

(5) interference with contract/prospective economic advantage, (6) shareholder derivative action, (7) fraudulent transfers, (8) abuse of process, and (9) joint liability.

On February 26, 2015 Mr. Wyles sued essentially the same group of defendants in this district. *Wyles v. Aluminaid International, et al.,* No. 15-cv-00393-CMA-KMT. In addition to the nine claims he was simultaneously prosecuting in his state court case he asserted claims of misrepresentation and negligence. *See* ECF No. 1 in No. 15-cv-00393-CMA-KMT. The court dismissed Mr. Wyles' claims on grounds of improper claim splitting, but the Tenth Circuit vacated the dismissal order and remanded for further proceedings. *Wyles v. Sussman,* 661 F.App'x 548 (2016) (unpublished). Nevertheless, the parties eventually stipulated to the dismissal of the federal case without prejudice. *See* ECF Nos. 61 and 62 in that case.

The California lawsuit against Mr. Wyles was dismissed on October 27, 2016. That dismissal seems to have motivated Mr. Wyles' filing of the present case on August 1, 2017. Mr. Wyles again sued nearly the same group of defendants, adding Joseph Marten and Thomas D. Brady. ECF No. 1. In his Amended Complaint, now the operative complaint, Mr. Wyles asserts three claims for relief: (1) malicious prosecution, (2) outrageous conduct; and (3) joint liability. ECF No. 6. Apparently Mr. Wyles had tried to amend his state court complaint to add those claims but filed the present case when he struck out in Arapahoe County.

Finally, as a hedge against this Court's ultimate decision on the two pending jurisdictional motions, Mr. Wyles filed essentially a carbon copy of the present suit in the United States District Court for the Central District of California. No. 2:17-cv-07722-DMG-SK. When informed of the filing of that case this Court inquired whether he still planned to go forward with the present case, since there are apparently no personal jurisdiction issues to be faced in

California. He responded that he preferred to proceed in the present case due to differences in the states' procedures for substitute service of process. ECF No. 57.

## MOTIONS TO DISMISS

Defendant Allen Z. Sussman is a corporate lawyer and a partner in the Los Angeles office of the law firm, Loeb & Loeb, L.L.P. Plaintiff alleges that he is, or at least at times pertinent was, both the principal outside counsel for Aluminaid, its Corporate Secretary, and a member of its board of directors. Plaintiff claims that Mr. Sussman and his law firm, the "Loeb defendants," participated in the prosecution of the California case that was dismissed. Mr. Sussman is a resident and citizen of the State of California. Loeb & Loeb has no Colorado office. Mr. Sussman denies that he is or was the Corporate Secretary of the defendant corporations. In any event, the Loeb defendants deny that they do business in Colorado or otherwise have sufficient minimum contacts with Colorado to support personal jurisdiction here, and they move to dismiss on that basis. ECF No. 15.

Plaintiff claims that Thomas D. Brady, a retired captain in the Los Angeles Fire Department, was a member of Aluminaid's "Advisory Board" starting in 2012 and continuing at least to 2015. Wyles Aff., ECF No. 27-1, at 2-3, ¶6. He too, according to Mr. Wyles, was involved in the prosecution of the California state court case. Mr. Brady has moved to dismiss for lack of personal jurisdiction. ECF No. 17.

The motions have been fully briefed. The Court held an evidentiary hearing on the motions on June 8, 2018.

**STANDARD OF REVIEW**

The court may, in its discretion, address a Rule 12(b)(2) motion based solely on the documentary evidence on file or by holding an evidentiary hearing. *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). Where the court rules on the motion based only on the documentary evidence before it, the plaintiff may meet its burden with a prima facie showing of personal jurisdiction. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). The court "tak[es] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged" in the complaint, and "any factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). However, when an evidentiary hearing is held in order to resolve factual disputes relating to jurisdictional questions, as in the present case, the plaintiff must prove facts supporting jurisdiction by a preponderance of the evidence. *See Oaklawn*, 959 F.2d at 174.

**PERSONAL JURISDICTION GENERALLY**

**A. Due Process.**

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo.

2005).  Therefore, this Court need only determine whether exercise of jurisdiction over the defendants comports with due process.

**B. <u>Minimum Contacts</u>.**

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).  In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 U.S. 310, 323 (1945).  Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).  A defendant's contacts with the forum must be such that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways.  First, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Second, specific jurisdiction exists where the cause of action is "related to" or "arises out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted).  In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum

6

State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). This inquiry "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov,* 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475)).

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1244–45 (D. Colo. 2010) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The Supreme Court has identified the following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77.

## FINDINGS AND CONCLUSIONS

When Wyles sued the Loeb defendants in the Arapahoe County District Court, they did not contest personal jurisdiction. Rather, they are actively defending that case at the present time. Similarly, when the Loeb defendants were sued the first time in this court the Loeb defendants moved for abstention or dismissal on separate grounds of claim splitting, the *Colorado River* doctrine, and the *Rooker-Feldman* doctrine, but not on a lack of personal jurisdiction. ECF No.7 at 7-13 in No. 15-cv-00393-CMA-KMT. Their actions in defending

those cases constitute, in my judgment, an implicit acknowledgement that they have sufficient minimum contacts with Colorado to permit the constitutional exercise of personal jurisdiction over the present case.

I recognize, of course, that the present case focuses on the allegedly wrongful prosecution of a lawsuit against Mr. Wyles in California. However, it ultimately arises out of the same underlying facts and circumstances as the rest of the parties' ligation with each other, namely, the deterioration and collapse of the parties' business relationship. Personal jurisdiction turns on due process which turns on concepts of fairness: is it reasonable and fair to expect a party to defend himself or itself in a particular jurisdiction. Due process does not invite the Loeb defendants to pick and choose which of Mr. Wyles' suits they will defend here and which they will not.

The Loeb defendants cite *Grynberg v. Ivanhoe Energy, Inc.,* 666 F. Supp.2d 1218 (D. Colo. 2009). In that case Jack Grynberg sued a Canadian company and others, claiming a conspiracy to steal a lucrative business opportunity in Ecuador. Included among the named defendants was the CEO of the Canadian company who resided in Singapore. The CEO had previously been involved in three other lawsuits in Colorado when he had been a director and the president of a different company. Grynburg argued that the CEO's participation in the previous lawsuits was sufficient to establish *general* jurisdiction over him. *Specific* jurisdiction was not asserted as to the CEO. However, while the court noted that the CEO's previous litigation in Colorado "undermines some of the policy grounds for the doctrine of personal jurisdiction," it found no authority supporting the proposition that "unrelated litigation related to a single separate issue is sufficient to confer general jurisdiction on a defendant for any and all future

lawsuits." *Id.* at 1231. The court further stated that even if there were a case to be made for finding jurisdiction, it would decline to exercise it because it would not find that "the exercise of personal jurisdiction comport[s] with traditional notions of fair play and substantial justice." *Id.* at 1232.

I agree that the mere participation in a separate lawsuit or lawsuits in Colorado would not establish *general* jurisdiction, which requires contacts "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). However, I conclude that the Loeb defendants' litigation with Mr. Wyles in Colorado in the context of the facts of this case supports a finding of *specific* jurisdiction in this case.

The second factor that supports a finding of specific jurisdiction as to the Loeb defendants is evidence concerning Mr. Sussman's involvement in the affairs of Aluminaid. Mr. Wyles testified that Mr. Sussman undertook representation of Aluminaid in approximately January 2012 when he was with a previous law firm. He then became a partner of Loeb & Loeb in approximately May or June 2012 and brought Aluminaid with him as a client. Aluminaid's Business Plan – the same plan that identified Mr. Wyles as in-house counsel-- identified Mr. Sussman as Aluminaid's Corporate Secretary and a member of its Board of Directors. ECF No. 27-2 at 38.

The Loeb defendants deny that Mr. Sussman held those positions, explaining that the firm's policy prohibits it. Notably, however, plaintiff introduced a Memorandum Opinion in a case called *OptimisCorp v. Waite,* C.A. No. 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015). In that case the court referred to Mr. Sussman as a partner of Loeb & Loeb who was

9

acting as Optimis' Corporate Secretary in October 2012.  2015 WL 5147038 at \*\*48, 49.  This was approximately the same timeframe as Mr. Sussman's alleged service as the Corporate Secretary of Aluminaid.  Mr. Wyles testified that he was always under the impression that Mr. Sussman was the Corporate Secretary of Aluminaid until Mr. Sussman began to deny it in the present case.  He added that he believes that Mr. Sussman was aware of his bio in the Aluminaid Business Plan because "we all had to give our bios for the Business Plan," and multiple drafts of the Plan were circulated.

At a minimum, Aluminaid touted Mr. Sussman as a specialist in corporate and securities law and a member of its management team in its Business Plan, a document used to try to attract investors.  There is no evidence in the record of this case that either Mr. Sussman or the law firm objected to Aluminaid's characterization of Mr. Sussman's role in the Business Plan at the time.  Although the evidence concerning Mr. Sussman's exact role in the company is not clear, I find from the evidence I have received that Mr. Sussman was intimately involved in Aluminaid's business and legal affairs, dating back to the time of Aluminaid's Colorado days and continuing thereafter when the disputes between Mr. Wyles and Aluminaid that have resulting in multiple lawsuits surfaced.  Those contacts are another factor that supports a finding of specific jurisdiction over the Loeb defendants in this case.

I conclude that this Court has specific jurisdiction over the Loeb defendants with respect to resolution of the disputes arising out of the former professional relationship among the parties.  The cause of action is "related to" or "arises out of" the defendant's activities within the forum state.  *See Helicopteros Nacionales*, 466 U.S. at 414.  Unlike the facts in *Grynburg,* the exercise

of personal jurisdiction over the Loeb defendants on the particular facts of this case does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316.

This is not, however, applicable to Mr. Brady. He was not named as a defendant in the other Colorado cases. As I have noted, he is a retired Los Angeles Fire Department captain. He lives in California. Mr. Brady's connection to Aluminaid relates to his firefighting background. Aluminaid PTE, Ltd is an Aluminaid company that was organized to manufacture and sell a burn relief product. Aluminaid included Mr. Brady's picture, in uniform, in its Business Plan, characterizing him as a member of its Advisory Board with the title "Executive Vice President Gov't Affairs. ECF No. 27-2 at 39.[2] Mr. Brady denies that he held those positions as such, but he stated in an affidavit in the California case, Hearing Ex. 14, that he began acting as an advisor and consultant to Aluminaid in approximately December 2012. He was an expert on emergency burn relief services, including Aluminaid's burn relief bandages. In the California affidavit he describes a telephone call he received from Mr. Wyles concerning Mr. Wyles' discovery or wrongdoing by Mr. Freer and related matters. *Id.* Mr. Wyles characterizes that affidavit as "false" and the product of a conspiracy among Brady, Sussman and others. Wyles Aff., ECF No. 27-1, at 3-4, ¶¶7-8. That apparently is the genesis of Mr. Wyles' inclusion of Mr. Brady as a defendant in the present case. But it brings Mr. Brady no closer to Colorado. One telephone call with Mr. Wyles is not enough either.

Having reviewed the entire record concerning Mr. Brady, I do not find it credible that Mr. Brady had any active role with Aluminaid in Colorado. Indeed, Mr. Wyles states in his affidavit

---

[2] At the jurisdiction hearing Patrick Joseph Sandoval who at various points had been Director of Human Resources, Director of Regulatory Affairs, and an in-house lawyer for Aluminaid, testified that he drafted Mr. Brady's bio for the Business Plan after consulting with Mr. Brady.

that the companies moved some of their operations to California in October 2012, ECF No. 27-1 at 2, ¶5, which is two months before Mr. Brady says he became a consultant to Aluminaid. But even if he did provide advice concerning burn relief matters from time to time while Aluminaid was a Colorado-based company, it is insufficient to establish specific jurisdiction as to him in the present case. Simply put, I conclude that plaintiff has not carried its burden of establishing that Mr. Brady has minimum contacts with Colorado that would justify haling him into court in this state.

## ORDER

The motion to dismiss of the Loeb defendants, ECF No. 15, is DENIED. The motion to dismiss of Thomas D. Brady, ECF No. 17, is GRANTED.

DATED this 9th day of July, 2018.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge